# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-369-JDR-CDL

---

SONIA R. WEIDENFELDER,

*Petitioner,*

*versus*

JUSTIN FARRIS, *Director,*[1]

*Respondent.*

---

## OPINION AND ORDER

---

Petitioner Sonia R. Weidenfelder, an Oklahoma prisoner appearing through counsel, seeks federal habeas relief under 28 U.S.C. § 2254 through a Petition for Writ of Habeas Corpus. Dkt. 2. Ms. Weidenfelder alleges she received ineffective assistance of appellate counsel because her counsel failed to raise two claims on direct appeal. *Id.* at 5. The Court considered Ms. Weidenfelder's Petition and Brief in Support of the Petition [Dkts. 2 and 7], Respondent's Response to the Petition [Dkt. 10], the state court records provided by Respondent [Dkts. 10-1 through 10-17; Dkts. 12-1 through 12-41; Dkt. 13], and applicable law. For the following reasons, the Petition [Dkt. 2] is denied.

---

[1] Ms. Weidenfelder is in the custody of the Oklahoma Department of Corrections, and Justin Farris is the Director of ODOC. The Court therefore substitutes Justin Farris, Director, in place of Tamika White as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts.* The Clerk of Court shall note on the record this substitution.

No. 23-cv-369

## I

On April 20, 2018, a jury convicted Ms. Weidenfelder of first-degree murder in Tulsa County District Court Case No. CF-2017-682. Dkt. 12-20 at 46. On June 1, 2018, the trial court sentenced Ms. Weidenfelder to life imprisonment. Dkt. 12-35 at 36.

Ms. Weidenfelder's murder conviction stems from the death of Debra Morgan between November 6, 2016, and November 7, 2016. Dkt. 12-24 at 11. Ms. Weidenfelder was Richard Spaulding's girlfriend, and the two lived together. Dkt. 12-14 at 9-10; Dkt. 12-16 at 116. Ms. Morgan was Mr. Spaulding's ex-wife and mother to Ms. Morgan and Mr. Spaulding's son, A.S. Ms. Morgan and Mr. Spaulding were in a protracted, contentious custody dispute. Dkt. 12-16 at 56-57.

In the spring of 2016, a judgment was entered against Mr. Spaulding for failing to pay his child support, and he was required to pay $10,000.00 in past due child support. Dkt. 12-16 at 57. As of November 2016, Mr. Spaulding had not been complying with a court-ordered payment arrangement. *Id.* at 58. Additionally, the state court sanctioned Mr. Spaulding for failing to comply with discovery requests by imposing a $100.00 per day fine. *Id.* at 59. He also had not paid the discovery fees. *Id.* Mr. Spaulding was unemployed. Dkt. 12-17 at 136-137. There were two upcoming hearings concerning these matters. First, the state court scheduled a hearing for November 8, 2016, to allocate parenting time between Mr. Spaulding and Ms. Morgan and to decide the discovery sanctions. Dkt. 12-16 at 58. Second, the state court scheduled a hearing for November 18, 2016, to review Mr. Spaulding's compliance with the payment schedule for child support arrearage. *Id.* Mr. Spaulding was facing jail time for his failure to pay the child support. *Id.* at 58-59.

Mr. Spaulding was troubled by the upcoming court dates. *See, e.g.,* Dkt. 12-16 at 82-83, 85; *see also* Dkt. 12-17 at 1-3 and Dkt. 12-18 at 174, 226-227. Witnesses testified to various plans Mr. Spaulding and Ms. Weidenfelder

2

No. 23-cv-369

contemplated, and at times partly executed, to eliminate the inconvenience Ms. Morgan posed to their lives. *See* Dkt. 12-17 at 25-27 (Stephanie Montandon, Ms. Weidenfelder and Mr. Spaulding's roommate, testified about a plan to email the local news "with Rick's story," and Ms. Weidenfelder contemplated putting up fliers about Ms. Morgan), 188-189 (On October 14, 2016, Ms. Weidenfelder made a DHS referral concerning Ms. Morgan), 211-212 (Ms. Weidenfelder asked others for help in writing letters to the district attorney about Mr. Spaulding's custody dispute).

On November 7, 2016, A.S. came home from school around 4:00 p.m. – 4:30 p.m. Dkt. 12-14 at 14-15. He had left his key to the back door of Ms. Morgan's home at Mr. Spaulding's home and, therefore, entered the home through the garage using the keypad to open the garage door.[2] *Id.* at 14. Ms. Morgan's car was in the garage, which was unusual. *Id.* at 14-15. Upon entering the home, A.S. found Ms. Morgan in her bedroom and thought she was sleeping. *Id.* at 17-18. He turned on the light and when he saw her, he "grabbed [his] bag and then just ran out and went into a house next-door and asked them to call 911." *Id.* at 18. Ms. Morgan suffered a fatal shotgun blast to the face. Dkt. 12-18 at 26.

During their investigation, authorities learned Mr. Spaulding had recently procured a shotgun from Patricia Nelson. Dkt. 12-18 at 8-10. Mr. Spaulding also contemplated shortening the shotgun. Dkt. 12-18 at 179. In October of 2016, Stephanie Montandon witnessed Ms. Weidenfelder take a gun from the trunk of Ms. Weidenfelder's car into the home she shared with Mr. Spaulding. Dkt. 12-17 at 18. A shotgun was ultimately recovered from a storm drain near Ms. Morgan's home. *Id.* at 34-36. Zachary Blasdel testified that the shotgun recovered was his shotgun he left with Ms. Nelson before

_____

[2] During the investigation into Ms. Morgan's murder, A.S.'s key was found without a keychain in his bedroom in Mr. Spaulding and Ms. Weidenfelder's residence. *See* Dkt. 12-18 at 225-226; *see also* Dkt. 12-14 at 13.

No. 23-cv-369

going to prison, but the barrel had been shortened. *Id.* at 120-122. Further, the jury heard testimony that the wadding found at the crime scene was consistent with a Winchester brand 12-gauge shot wad[3] and the gun found in the drain was a 12 gauge. Dkt. 12-18 at 117-119, 130; *see also* Dkt. 12-19 at 50-53.

Police seaerched Mr. Spaulding and Ms. Weidenfelder's cell phones pursuant to a search warrant. Dkt. 12-18 at 165, 167-168. Text exchanges between Mr. Spaulding and Ms. Weidenfelder alluded to the upcoming court dates, running out of time, and options available to the couple. *See, e.g.,* Dkt. 12-18 at 173; Dkt. 13 (State's Ex. 169). For instance, in one exchange, Mr. Spaulding stated, "we don't get to have what we want [S]onia[.] That has long been clear[.]" Dkt. 13 (State's Ex. 169); *see also* Dkt. 12-18 at 176-177. Ms. Weidenfelder responded, "we could … if you would stop tying my hands[.]" Dkt. 13 (State's Ex. 169); *see also* Dkt. 12-18 at 176-177. Mr. Spaulding replied, "Sonia they'll know. And we'd both miss out on our kids['] future[.]" Dkt. 13 (State's Ex. 169); *see also* Dkt. 12-19 at 100. At another point, Mr. Spaulding stated to Ms. Weidenfelder, "otherwise this thing you advocate ends us both and removes our kids forever." Dkt. 13 (State's Ex. 169). Mr. Spaulding and Ms. Weidenfelder never identify a specific plan in their text communications. Dkt. 12-18 at 177; Dkt. 13 (State's Ex. 169).

The jury also heard an audio recording of a conversation between Mr. Spaulding and Ms. Weidenfelder recovered from Mr. Spaulding's phone. During that conversation, Ms. Weidenfelder stated, "[y]ou told everybody my plan, you took that away from me, you know, you took my choice away from me[.]" *See* Dkt. 12-18 at 211; Dkt. 13 (State's Ex. 155R); *see also* Dkt. 12-18 at 181. At another point in the conversation Mr. Spaulding said, "killing her isn't going to do anything." Dkt. 12-20 at 13; Dkt. 13 (State's Ex. 155R). Ms. Weidenfelder responded, "yes, it will. It will stop her." Dkt. 12-20 at 13;

---

[3] The wadding is "a shotcup that keeps the pellets together." Dkt. 12-18 at 113.

No. 23-cv-369

Dkt. 13 (State's Ex. 155R). Authorities believe the audio recording took place near the end of October 2016. Dkt. 12-18 at 210-211.[4]

Mr. Spaulding and Ms. Weidenfelder were tried separately. Dkt. 10-11 at 3, n. 1. As noted, the jury found Ms. Weidenfelder guilty of first-degree murder. Dkt. 12-20 at 46. Mr. Spaulding was also convicted of first-degree murder and sentenced to life imprisonment. Dkt. 10-11 at 3, n. 1.

The Oklahoma Court of Criminal Appeals affirmed Ms. Weidenfelder's conviction. Dkt. 10-1. Ms. Weidenfelder applied for post-conviction relief that was denied. Dkts. 10-5 and 10-7. The OCCA also affirmed the district court's denial of Ms. Weidenfelder's application for post-conviction relief. Dkt. 10-11. Ms. Weidenfelder has now initiated the Petition here. Dkt. 2.[5]

## II

A federal court has discretion to grant federal habeas relief to a prisoner who is in state custody pursuant to a final criminal judgment if the prisoner "is in custody in violation of the Constitution or laws or treaties of

---

[4] Additional facts and details presented to the jury will be discussed below as necessary.

[5] Ms. Weidenfelder requested "[a] full and fair evidentiary hearing as to the Petition as a whole and in particular as to any issues which involve facts not apparent from the existing record and to any issues which involve facts disputed by the State." Dkt. 7 at 25-26. But when § 2254(d)'s framework applies, as it does in this case, a federal habeas court must consider whether the petitioner has satisfied § 2254(d)(1)'s precondition to relief only by looking to the record that was presented in state court proceedings. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). "In all but these extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'" *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)). For the reasons discussed next, Ms. Weidenfelder has not demonstrated, as to any claim, that she can satisfy § 2254(d)'s preconditions to habeas relief. And Ms. Weidenfelder does not argue, much less demonstrate, that she can make the showings necessary to obtain an evidentiary hearing under § 2254(e)(2). For these reasons, the Court denies Ms. Weidenfelder's request for an evidentiary hearing.

the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). But the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and as interpreted by the United States Supreme Court, significantly limits a federal court's discretion to grant habeas relief to a state prisoner.

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A). When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant habeas relief as to that claim unless the prisoner first shows that the state court's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to

No. 23-cv-369

the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the state court's decision unreasonably applied the law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show that the state court's decision rests on an unreasonable determination of the facts. But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, the reasonableness of a state court's factual determination also is measured by *Richter's* fairminded-disagreement standard. *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017). And "if [*Richter's*] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision. *Mays v. Hines*, 592 U.S. 385, 391-92 (2021) (per curiam). In addition, when § 2254(d) applies, the federal court's review is limited to the same record that was presented in state court unless and until the petitioner satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

No. 23-cv-369

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal court may then review the petitioner's federal claim de novo. *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014). But even on de novo review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings relevant to the federal claim. *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023). Moreover, even if the federal court determines that a constitutional error occurred, the court may not grant federal habeas relief unless the petitioner also "show[s] that the error had a '"substantial and injurious effect or influence"'" on the outcome of his trial." *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## III

As noted, Ms. Weidenfelder points to two instances of ineffective assistance of appellate counsel. Dkt. 2 at 5; *see also* Dkt. 7 at 13-25. The Court will address each sub-claim. First, Ms. Weidenfelder argues her appellate counsel was ineffective because he failed to raise a claim challenging the trial court's denial of Ms. Weidenfelder's request to admit Mr. Spaulding's statement regarding the location of the murder weapon. Dkt. 2 at 13. Ms. Weidenfelder presented this sub-claim to the OCCA when she appealed the denial of her application for post-conviction relief. Dkt. 10-8 at 14-21.

## A

In rejecting Ms. Weidenfelder's first claim of ineffective assistance of appellate counsel, the OCCA reasoned as follows:

> Claims challenging appellate counsel's effectiveness are appropriate in an original post-conviction application. *See Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d 969, 973. As set forth in *Logan*, post-conviction claims of ineffective assistance of appellate counsel are reviewed under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by

8

No. 23-cv-369

demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

Petitioner first argues that appellate counsel was ineffective for failing to raise a claim on direct appeal challenging the trial court's exclusion of a statement made by her co-defendant, Rick Spaulding,[1] directing police to the location of the murder weapon. Petitioner contends the statement was admissible as a statement against penal interest, *see* 12 O.S. Supp. 2014, § 2804(B)(3), or alternatively under the exceptional circumstances exception to hearsay, *see* 12 O.S.2011, § 2804.1, and that its exclusion deprived her of her due process right to present a full defense. The trial judge denied the defense's request to introduce evidence of Spaulding's statement upon finding it was not reliable because it was made in the context of Spaulding attempting to exculpate himself and shift all blame for the murder to Petitioner.[2]

It is unnecessary to decide whether the statement at issue was admissible. Even assuming for argument's sake the trial court abused its discretion in disallowing its admission, Petitioner has not shown a reasonable probability that the outcome of her appeal would have been different had appellate counsel raised the issue. Upon thorough review of the record, we find exclusion of Spaulding's statement relaying the location of the murder weapon did not have a substantial influence on the outcome of the trial, nor did it deny Petitioner the ability to present a defense that Spaulding alone committed the murder. *See Jones v. State*, 2009 OK CR 1, ¶ 42, 201 P.3d 869, 882.

The State presented ample evidence that Petitioner and Spaulding—motivated by a protracted and contentious child custody battle over Spaulding's child and a well-founded belief that Spaulding was imminently going to jail for unpaid child

9

No. 23-cv-369

support—conspired to murder his child's mother before the next scheduled court date. Such evidence included, but was not limited to, incriminating text messages between Spaulding and Petitioner, an audio recorded conversation between Spaulding and Petitioner discussing a plot to murder the victim, Petitioner's internet search history using search terms such as "fatal shotgun wound to the face" and "shotgun wound deaths" a few weeks before the victim was killed by a shotgun wound to the head, and Petitioner's repeated internet searches for "Broken Arrow breaking news" beginning the afternoon after the murder was committed but hours before the victim's body was discovered.

The State also presented compelling evidence of Spaulding's participation in the murder, which included, among other things, evidence establishing that he was the one who obtained the murder weapon shortly before the murder and modified it by sawing down the barrel. The trial evidence established, and the parties agreed, that Spaulding was a principle [sic] to the murder. Petitioner has not shown that Spaulding's statement evincing knowledge of the murder weapon's location, had it been admitted at trial, would have negated her own culpability for the murder or otherwise affected the outcome of the trial. We therefore find that exclusion of the statement did not have a substantial influence on the outcome of the trial.

Because this claim would not have prevailed, Petitioner has failed to demonstrate appellate counsel was ineffective for failing to assert it on direct appeal. *See Logan*, 2013 OK CR 2, ¶ 11, 293 P.3d at 975 ("The omission of a meritless claim, i.e., a claim that was destined to lose, cannot constitute deficient performance; nor can it have been prejudicial."). Therefore, Proposition I is denied.

[1] Petitioner and Spaulding were charged conjointly in this matter for the murder of Debra Morgan, the mother of Spaulding's child. Spaulding was convicted of Murder in the First Degree in a separate jury trial and sentenced to life imprisonment. This Court affirmed his judgment and sentence. *Spaulding v. State*, No. F-2018-668 (Okl. Cr. October 31, 2019) (not for publication).

No. 23-cv-369

² The record reflects that unbeknownst to Spaulding, law enforcement had already recovered the shotgun believed to be the murder weapon from a storm drain prior to his statement to detectives. The weapon was in fact found in a location where Spaulding suggested Petitioner may have disposed of it.

Dkt. 10-11 at 1–6. Ms. Weidenfelder argues the OCCA's denial of this claim was an unreasonable application of clearly established federal law and an unreasonable application of the facts. Dkt. 2 at 13-14.

B

The OCCA correctly identified the *Strickland* test. *See* Dkt. 10-11 at 2-3; *see also Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005) (noting *Strickland* is the appropriate test to apply to an ineffective assistance of appellate counsel claim). The OCCA then determined Ms. Weidenfelder's claim was meritless. *See* Dkt. No. 10-11 at 3-6. Thus, Ms. Weidenfelder must establish the OCCA unreasonably applied *Strickland. See Upchurch v. Bruce*, 333 F.3d 1158, 1167 (10th Cir. 2003).

Typically, a defendant alleging constitutionally deficient representation must show: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Strickland's* analytical framework also informs a court's adjudication of ineffective assistance of appellate counsel claims alleging deficiencies in appellate briefing. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Ordinarily, a court evaluating whether appellate counsel performed deficiently either by omitting or failing to adequately present an issue must "look to the merits of the omitted issue." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001)). And, in this context, an appellant must establish prejudice by "show[ing] a reasonable

No. 23-cv-369

probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

In framing this as a two-part inquiry, the *Strickland* Court did "not establish mechanical rules." *Strickland*, 466 U.S. at 696. Rather, *Strickland* emphasized that while the two-part inquiry "should guide" courts adjudicating ineffective assistance of counsel claims, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id. Strickland* also recognized that courts may adjudicate these claims without addressing both components of the two-part inquiry, stating,

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697.

As set out above, the OCCA only considered the prejudice prong of the *Strickland* test. *See* Dkt. 10-11 at 4. Ms. Weidenfelder challenges in this petition the OCCA's adjudication of the prejudice prong and argues "[t]here is a reasonable probability that had the jury heard the fact that Spaulding, when questioned by police, divulged the exact location where the shotgun was recovered, the outcome of the trial *as to [Ms. Weidenfelder]* would have been different." Dkt. 7 at 23 (emphasis in original). Accordingly, the Court declines to conduct a *de novo* review of the performance prong and, in

conformity with the OCCA's analysis and Ms. Weidenfelder's present argument, addresses only the prejudice prong.

As noted during trial and in the briefing here by Ms. Weidenfelder, the issue of the identity of Ms. Morgan's killer was central. Evidence was presented that Ms. Weidenfelder and Mr. Spaulding were in a relationship. Dkt. 12-14 at 9. Mr. Spaulding was part of lengthy custody battle with Ms. Morgan and was facing significant financial obligations and jail time as a result. Dkt. 12-16 at 56-59. Mr. Spaulding was troubled by this looming consequence. *See, e.g.,* Dkt. 12-16 at 82-83, 85; *see also* Dkt. 12-17 at 1-3 and Dkt. 12-18 at 174, 226-227. Mr. Spaulding and Ms. Weidenfelder discussed plans to aid Mr. Spaulding in evading responsibility for his financial failures and eliminate the inconvenience Ms. Morgan presented to both of their lives. *See* Dkt. 12-18 at 176-178. Evidence was presented that Ms. Weidenfelder had contemplated, and partly executed, several plans to accomplish this, including making a DHS referral, contacting the district attorney's office, contacting the news, and posting fliers around Broken Arrow. Dkt. 12-17 at 25-27; Dkt. 12-18 at 185, 188-189, 211-212; Dkt. 12-19 at 98-99. In October of 2016, Ms. Weidenfelder conducted Google searches for "shotgun wound to the face." Dkt. 12-18 at 216; *see also id.* at 216-217; Dkt. 13 (State's Ex. 170). The jury also considered a recorded conversation between Mr. Spaulding and Ms. Weidenfelder and inculpatory text messages between the two. *See* Dkt. 12-18 at 176-178, 181-182, 211; *see also* Dkt. 12-19 at 100; Dkt. 12-20 at 13 and Dkt. 13 (State's Exs. 155R, 169).

The jury also heard testimony of Mr. Spaulding's acquisition of a shotgun from Ms. Nelson. Dkt. 12-18 at 8-9. Further, Mr. Spaulding had communicated he was learning the shotgun, and he could shorten it to make it a better home defense weapon. Dkt. 12-18 at 179; Dkt. 13 (State's Ex. 169). Ms. Montandon testified that, at the beginning of October 2016, she witnessed Ms. Weidenfelder take a gun from the trunk of a car into Ms. Weidenfelder's garage. Dkt. 12-17 at 18.

No. 23-cv-369

Ms. Morgan was ultimately discovered on the afternoon of November 7, 2016, lying in her bed with a fatal shotgun blast to her face. Dkt. 12-14 at 13-14, 17-18; *see also* Dkt. 12-18 at 26. The afternoon of November 7, 2016, before authorities notified Mr. Spaulding of Ms. Morgan's death, Ms. Weidenfelder uncharacteristically searched on her phone for "breaking news" in Broken Arrow. Dkt. 12-18 at 219-221; Dkt. 13 (State's Ex. 172). Investigators were unable to develop fingerprints from the crime scene. Dkt. 12-17 at 100.

The main issue for the jury to resolve at trial was whether Mr. Spaulding acted alone or if Mr. Spaulding and Ms. Weidenfelder acted together. Dkt. 12-19 at 133. *Compare* Dkt. 12-20 at 6 (During closing argument the prosecution argued Mr. Spaulding and Ms. Weidenfelder committed the crime together) *with id.* at 18 and 23 (The defense argued in closing that Mr. Spaulding perpetrated the crime alone.). The state court instructed the jury as follows:

> All persons concerned in the commission of a crime are regarded by the law as principals and are equally guilty thereof. A person concerned in the commission of a crime as a principal is one who directly and actively commits the act(s) constituting the offense/knowingly and with criminal intent aids and abets in the commission of the offense.

Dkt. 12-34 at 36. The jury convicted Ms. Weidenfelder of first-degree murder. Dkt. 12-20 at 46. Accordingly, the jury concluded Ms. Weidenfelder, beyond a reasonable doubt, acted as a principal in the murder of Ms. Morgan.

Ms. Weidenfelder now argues that if the jury had only heard that Mr. Spaulding, during an in-custody statement while trying to shift blame from himself, provided the exact location of the shotgun to authorities, the jury

14

No. 23-cv-369

would have concluded that Mr. Spaulding acted alone and exonerated Ms. Weidenfelder. *See* Dkt. 7 at 21-23.[6]

The Court disagrees. The jury concluded that the circumstantial evidence presented was sufficient to convict Ms. Weidenfelder. If the jury was aware of this piece of evidence, it would have only bolstered the fact that Mr. Spaulding was involved. But his knowledge of the weapon's location did not establish Mr. Spaulding "was the actual murderer and had committed the crime alone." Dkt. 7 at 22. Mr. Spaulding could have known the location of the murder weapon if he acted alone or if he and Ms. Weidenfelder acted together to perpetrate the crime. There is no reasonable probability that this evidence would have changed the outcome of the trial, and it follows, after reviewing the record, Ms. Weidenfelder cannot demonstrate the result of her appeal would have been different had the omitted claim been included. The OCCA's decision was therefore well within the range of reasonable applications of *Strickland*. Habeas relief as to this sub-claim is denied.

IV

Next, Ms. Weidenfelder argues her appellate counsel was ineffective for failing to raise a claim challenging the trial court's admission of an audio recording from Mr. Spaulding's cellphone as violating her Sixth Amendment right to confrontation. Dkt. 2 at 5; Dkt. 7 at 13-14, 23-25. Ms. Weidenfelder

---

[6] Ms. Weidenfelder also argues the OCCA incorrectly analyzed the prejudice inquiry "under a legal theory of conspiracy that was neither charged by the State nor argued by any party at trial" and, therefore, the OCCA's adjudication was unreasonable. Dkt. 7 at 21. The OCCA did state there was "ample evidence that [Ms. Weidenfelder] and Spaulding … conspired to murder his child's mother[.]" Dkt. 10-11 at 4. However, the Court does not find support for the notion that the OCCA misapprehended the charged crime. *See id.* at 1 (noting Ms. Weidenfelder was convicted of murder in the first degree); *see also id.* at 4, n.1 (noting Ms. Weidenfelder and Mr. Spaulding "were charged conjointly in this matter for the murder of Debra Morgan."). Accordingly, as outlined, the Court does not find the OCCA unreasonably applied *Strickland*.

No. 23-cv-369

also presented this sub-claim to the OCCA when she appealed the denial of her application for post-conviction relief. Dkt. 10-8 at 21-25.

## A

The OCCA rejected this claim and held:

> Petitioner additionally claims ineffective assistance of appellate counsel for failing to raise a Confrontation Clause challenge to the statements made by Spaulding on the audio recording. The trial court overruled the defense's objection on this ground, as well. Because the challenged statements were nontestimonial, they were not subject to the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Davis v. Washington*, 547 U.S. 813, 821-22 (2006); *cf. Tryon v. State*, 2018 OK CR 20, ¶¶ 41-42, 423 P.3d 617, 633. Petitioner therefore fails to demonstrate the trial court abused its discretion. *See Spruill*, 2018 OK CR 25, ¶ 10, 425 P.3d at 756. Likewise, she fails to demonstrate appellate counsel was ineffective for omitting this meritless claim on direct appeal. *Logan*, 2013 OK CR 2, ¶ 11, 293 P.3d at 967. This proposition is denied.

Dkt. 10-11 at 8-9.

Ms. Weidenfelder argues that it was "unreasonable" for the OCCA to conclude that *Crawford* did not apply to the recording. Dkt. 7 at 25.

## B

Once again, because the OCCA correctly identified the *Strickland* test, Ms. Weidenfelder must establish that the OCCA unreasonably applied *Strickland. See Upchurch*, 333 F.3d at 1167.

Turning to the merits of the omitted claim, Ms. Weidenfelder's position is that Mr. Spaulding's statements in the audio recording were testimonial and appellate counsel's failure to challenge the trial court's ruling to the contrary rendered appellate counsel ineffective. Dkt. 7 at 25.

The Sixth Amendment "provides that 'in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against

16

him.' This right of confrontation has been applied to the states through the Fourteenth Amendment." *Myatt v. Hannigan*, 910 F.2d 680, 682 (10th Cir. 1990) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)). The Supreme Court has held that testimonial hearsay violates a defendant's right to confront and cross-examine under the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 54 (2004). But "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, 576 U.S. 237, 245 (2015). "[T]he question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'" *Id.* (citations and internal brackets omitted). Finally, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9.

The audio recording at issue here was retrieved from Mr. Spaulding's phone, and the recording captured approximately forty-nine minutes of dialogue between Mr. Spaulding and Ms. Weidenfelder. *See* Dkt. 12-18 at 205. The exact date of the recording was unknown, but authorities believed it occurred near the end of October. Dkt. 12-18 at 210-211; *see also* Dkt. 12-34 at 20. The recording appeared to have been created while both Mr. Spaulding and Ms. Weidenfelder were in their home. *See* Dkt. 12-18 at 193. The trial court admitted the recording to give "context to the responses given" by Ms. Weidenfelder and not for "the truth of the matter[.]" Dkt. 12-18 at 208. As noted above, the recording contained various inculpatory statements by Ms. Weidenfelder. *See* Dkt. 12-18 at 211; Dkt. 12-20 at 13; Dkt. 13 (State's Ex. 155R.

The jury was provided the following instruction:

Statements of Richard Spaulding during the purported conversation with the defendant may not be considered by you as to the truth of the matter asserted and may not be considered by you as to proof of the guilt or innocence of the defendant of

17

No. 23-cv-369

the specific offense charged in the information. These statements have been given to you solely for the limited purpose of providing context to the responses given.

Dkt. 12-34 at 21.

The statements by Mr. Spaulding "were made informally and out of court or custody to an acquaintance. Therefore, the hearsay statements were nontestimonial, and under *Davis* the Confrontation Clause does not apply." *Weedman v. Hartley*, 396 F. App'x 556, 563 (10th Cir. 2010); *see also Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (holding that with *Crawford*, "the Confrontation Clause no longer applied to non-testimonial hearsay such as [a] friend-to-friend confession"); *Barnes v. Davis*, No. 11-cv-02760-REB, 2012 WL 3869019, at *6 (D. Colo. Sept. 6, 2012) (unpublished)[7] (holding a state appellate court's conclusion that a statement made "during a private, informal conversation between two friends" was non-testimonial was a reasonable application of *Crawford* and *Davis*), *certificate of appealability denied*, 513 F. App'x. 803 (10th Cir. 2013). Accordingly, Ms. Weidenfelder's sub-claim is meritless, and Ms. Weidenfelder has not demonstrated her appellate counsel's performance was deficient for failing to raise this claim. It follows, therefore, that the OCCA's decision was well within the range of reasonable applications of *Strickland*. Habeas relief as to this sub-claim is denied.

## V

The Court finds and concludes that Ms. Weidenfelder has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254. The Court therefore denies the Petition. The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not debate the correctness of this Court's assessment of Ms. Weidenfelder's

---

[7] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

18

No. 23-cv-369

constitutional claim. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED that the Petition [Dkt. 2] is denied; a Certificate of Appealability is denied; and a separate Judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of Court shall note on the record the substitution of Justin Farris, Director, in place of Tamika White as party Respondent.

DATED this 27th day of April 2026.

John D. Russell
*United States District Judge*